UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| Randall Steven Hernandez, Jr., ) | |
| SSN: xxx-xx-3828 ) | Case No. 10-41290 SBB |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |

**OPINION AND ORDERS ON DAVID V. WADSWORTH'S MOTION FOR SANCTIONS FOR OTHER REASONS VIOLATING 11 U.S.C. § 110 AGAINST BANKRUPTCY PETITION PREPARER ANN MARIE MILLER AND RELATED MOTIONS**

On July 18, 2011, starting at approximately 1:30 P.M.,[1] the Court entered its bench ruling on David V. Wadsworth's Motion for Sanctions for Other Reasons Violating 11 U.S.C. § 110 Against Bankruptcy Petition Preparer Ann Marie Miller, (docket #21), ("Motion"), which was joined by the United States Trustee and Miller's request to set a presumptive fee for bankruptcy petition preparers. This opinion also incorporates earlier findings of fact and conclusions of law made by the Court during the July 14, 2011 hearing in this matter.

### History of the Case

On December 15, 2010, Randall Steven Hernandez, ("Debtor"), filed his voluntary petition in bankruptcy under chapter 7. Ann Marie Miller, ("Miller"), acting as a bankruptcy petition preparer, as regulated by 11 U.S.C. § 110, disclosed her compensation in the amount of $400, (docket #7). The Debtor's contract with Miller, which was attached to Miller's Response to the Motion, (docket #22), discloses that the $400 fee consisted of a $150 fee for the actual "typing" of the Debtor's Statement of Financial Affairs, Schedules, Chapter 7 Means Test, (Form 22A), Statement of Intent and related exhibits. The remaining $250 charged by Miller was designated as her fees for, "filling out Official Form 3, assisting with credit counseling, (computer use, phone use, technical assistance), the 100% guarantee (any amendments regardless of fault), proofreading your petition, ensuring that Form 23 is completed in a timely manner, etc."

David V. Wadsworth, Esq., ("Wadsworth"), was appointed as the interim Chapter 7 trustee in this case by the United States Trustee, ("UST"), (docket #10). A first meeting of creditors pursuant to 11 U.S.C. § 341(a) was set for January 13, 2011. Wadsworth conducted and concluded that meeting on January 13, 2011 and, because no other person was elected at the meeting, became the "permanent" Chapter 7 trustee in the Debtor's case.

---

[1] The Court's oral findings of fact and conclusions of law are incorporated and memorialized in this opinion.

In the course of reviewing the Debtor's Schedule C- Property Claimed as Exempt, docket #2, p. 22, Wadsworth identified two issues regarding the Debtor's claims of exemption. The Debtor claimed a 75% exemption in his Wells Fargo checking account and a 75% exemption in his garnished wages. The Debtor cited as the laws supporting his claim of exemption COLO.REV.STAT. §§ 13-54-104(2)(a), 5-5-104, and 5-5-106. Under FED.R.BANKR.P. 4003(b)(1), a party in interest must file an objection to a debtor's claims of exemption within thirty days of the conclusion of "the meeting of creditors held under § 341(a)" unless that time is extended by an order entered before the expiration of that thirty day period.

Wadsworth filed an objection to the Debtor's claim of exemption in the funds which had been garnished from his pre-petition wages and argued therein that the claim of exemption in garnished wages was without merit. Wadsworth argued that the claim of exemption under §§ 13-54-104(2)(a) and 5-5-106 was invalid because the funds lodged with the garnishing court by the garnishee in response to the garnishor's writ of garnishment do not include the judgment debtor's "exempt earnings." He further argued that § 5-5-104 was inapplicable to a post-judgment garnishment because that statute only bars pre-judgment garnishment of earnings.[2]

Although Wadsworth did not object to the Debtor's exemption in his Wells Fargo account, Wadsworth alleged in the Motion that this exemption created the appearance of Miller having provided the type of legal advice which bankruptcy petition preparers are prohibited from giving under § 110(e)(2). *See, Motion*, p. 3, ¶ 17(b).

The Motion was filed on February 14, 2011 and averred as Wadsworth's bases for seeking sanctions against Miller under 11 U.S.C. § 110 that:

- A. Miller is a disbarred attorney who had been licensed in Virginia;
- B. Miller acted as a bankruptcy petition preparer in the Debtor's case;
- C. Miller drafted, and the Debtor filed, a motion seeking to pay his filing fee in installments;[3]
- D. The Debtor's claims of exemption contain numerous citations to statutory provisions which the Debtor was unlikely to have identified himself thereby suggesting that Miller, and not the Debtor, decided which exemptions the Debtor should claim, including the non-meritorious claim of exemption in garnished funds;
- E. The Debtor's answers to the questionnaire for pro se debtors, Wadsworth's Exhibit 2, represented that Miller had:
    - (i) Told the Debtor that she was an attorney; and
    - (ii) Explained the differences between the relief available under chapter 7, 11, 12 or 13 of the United States Bankruptcy Code.
- F. Miller's fee of $400 was excessive and should be disgorged to the estate under 11 U.S.C. § 110(h)(3)(A); and

---

[2] No response was filed to Wadsworth's Objection to Exemption and the Court sustained that objection on March 1, 2011 (docket # 26).

[3] Docket # 8. *See also*, docket # 9 (order granting the motion), # 14 (receipt for second installment of the filing fee) and # 36 (receipt for final installment of filing fee).

2

      G.      The Debtor's motion to pay the filing fee in the case was used as part of a strategy to enable Miller to bulk file cases that she prepared without violating § 110(g).

Miller filed her response, ("Response"), to the Motion on February 14, 2011, (docket #22). The Response articulated a number of bases for denial of the Motion. These can be summarized as:

      A.      The Debtor's wife, Amber Hernandez,[4] completed Exhibit 2 for her husband and made mistakes in completing that form;

      B.      Miller's bankruptcy petition software, a commonly used commercial software package known as "Best Case," highlighted the exemptions and provides the statutory citations. The Debtor was shown the software screens dealing with these exemptions and asked to make a selection of the exemptions that the Debtor wished to claim. However, had the Debtor chosen an exemption which did not appear to be appropriate, Miller would have advised him to do some "research" about exemption law on the Internet using search queries on the www.google.com website and some other web sites with legal authorities such as Cornell University's online version of title 11, United States Code, *i.e.*, the United States Bankruptcy Code;[5]

      C.      It is inappropriate for the Court to expect Miller, "as a former attorney to pretend I [Miller] I don't know anything. I care too much about debtors to do that";[6]

      D.      Miller provides, and charges, for her services as a qualified librarian with a masters degree in library science and that she is not precluded, under § 110, from providing such services;

      E.      Miller's $400 fee is not unreasonable because she provides additional services, such as assisting prospective debtors to do legal research, and that these services provide added value;

      F.      Miller's overhead and the other economics of her bankruptcy petition preparer practice do not permit her to continue in business at a lower fee level; and

      G.      Miller controverts the propriety of the procedures which resulted in her losing her license to practice law in Virginia.

Miller filed a motion on February 18, 2011, docket #23, to refer the Motion to alternative dispute resolution and seeking an order of the Court to form a committee to propose a local bankruptcy rule regulating bankruptcy petition preparers, including the promulgation of a presumptive fee for bankruptcy petition preparers. That motion acknowledges the existence of case law, local rules, and guidelines from other federal judicial districts which "supports the concept that a petition preparer can only charge $100 to $150."

The UST responded to Miller's motion in an objection which asserted that the setting of a presumptive fee was appropriate but that the creation of committee and/or the referral of the

---

[4] Ms. Hernandez did not file a joint petition with the Debtor.

[5] http://uscode.law.cornell.edu/uscode/html/uscode11, visited on July 25, 2011.

[6] Response p.1, ¶ 4.

3

Motion to alternative dispute resolution was not, docket #30. This objection also asserted that the relief sought by Wadsworth was appropriate.

Wadsworth joined in that objection, docket #32 filed March 8, 2011. Miller filed a reply to the UST's objection on March 7, 2011. Miller's reply acknowledged the existing case law limiting the amount and scope of bankruptcy petition preparer fees, while arguing that the amount of fees allowed under those opinions are not adequate. The reply reiterated Miller's argument that she is not barred from offering and charging for teaching prospective debtors how to do legal research. It further reiterated that $400 is, in her opinion, a reasonable fee. The reply expanded Miller's argument that a local rule regulating bankruptcy petition preparer practice would be of benefit to the Court, bar, debtors and other parties in interest.

On April 5, 2011, the Court conducted a non-evidentiary hearing at which it heard arguments on the Motion, Response, motion to refer the Motion to alternative dispute resolution and to establish a committee, and Miller's reply. The Court denied Miller's motion to refer the Motion to alternative dispute resolution and to establish a committee at that April 5, 2011 hearing, docket ## 40, 41.[7] The Court set over the Motion to a final evidentiary hearing after Miller declined to have the Court enter orders based upon the arguments presented at the April 5, 2011 hearing, docket #39.

On July 7, 2011, Stephen E. Berken, Esq., ("Berken"), entered an appearance on behalf of Wadsworth, docket #49.

On July 8, 2011, the UST filed a brief in support of his prior pleadings in the case. That brief synopsized the existing case law under 11 U.S.C. § 110 which is pertinent to the Motion and provided the Court with an overview of existing case law, local rules, general procedural orders, and bench rulings on "presumptive fees" for bankruptcy petition preparers from a variety of federal judicial districts. The brief urged the Court to support the establishment of a presumptive fees for bankruptcy preparation services in this district.

The Court convened a hearing on the Motion on Thursday, July 14, 2011 at which it heard evidence and arguments. The Court took the motion under advisement and set a hearing on its bench ruling for Monday, July 18, 2011 at 10:00 A.M., docket # 54, as modified by docket #55.

At 8:52 A.M. on July 18, 2011, Miller filed her own Chapter 13 case in the United States Bankruptcy Court for the District of Colorado, Case No. 11-26914 ABC (the "Miller Bankruptcy Case").

The Court *sua sponte* continued the hearing on its bench ruling to 1:30 P.M. on July 18, 2011. The Court's July 14, 2011 orders permitted the parties to appear telephonically. Miller was connected to the Court by phone but failed to enter an appearance when the Court requested such

---

[7] Out of an abundance of caution, the Court once again denied the relief sought by Miller in its July 14, 2011 orders at the hearing on the Motion, docket #53, as amended by docket #55, and reduced to judgment on July 14, 2011, docket #56.

appearances.[8] At the hearing convened at 1:30 P.M. on July 18, 2011, the Court entered its oral ruling as preliminary orders[9] pending the granting of relief from the automatic stay in the Miller Bankruptcy Case. The United States Trustee, ("UST"), sought such relief in a motion filed July 20, 2011, (Miller docket #12). On August 26, 2011, the court in the Miller Bankruptcy Case entered its Order on Motion for Relief from Stay, (Miller docket #47) and granted relief to "proceed with the liquidation of claims involving the debtor or the debtor's estate pursuant to certain proceedings presently pending in: *In re Randall Steven Hernandez*, Case no. 10-41290 SBB (Bankr.D.Colo.)."

As relief from stay in the Miller Bankruptcy Case has been granted the findings of fact and conclusions of law set forth herein shall be final orders of the Court.[10]

## Findings of Fact and Conclusions of Law

## Miller's Explanation About Licensure Status in Virginia is Not Credible

On October 20, 2009, the Virginia State Bar revoked Miller's license to practice law based upon her consent to this revocation.[11] Miller sought to argue that the revocation of her license was not a disbarment and that she was denied due process in the disciplinary proceeding. She further argues that she was deceived into signing the consent to revocation. The Court does not find Miller's explanation of the circumstances surrounding the revocation of her license nor much of Miller's other testimony to the Court to be credible.[12]

---

[8] The Court is informed that Miller claims, in emails to the UST and Wadsworth, that telephonic problems prevented her from entering her appearance.

[9] The Court also found that the entry of its ruling comes within the penumbra of the police and regulatory power exception to the automatic stay under 11 U.S.C. § 362(b)(4).

[10] The Court expresses no opinion about whether the monetary sanctions imposed in this case are "dischargeable" debts in Miller's pending Chapter 13 case should she receive a discharge therein.

[11] Wadsworth Exhibit 9. This consent to revocation is available online at http://www.vsb.org/docs/Miller-Consent-102609.pdf visited July 25, 2011. The Virginia Lawyer Registry for November 2009 summarizes the associated disciplinary action as follows:

> On October 20, 2009, the Virginia State Bar Disciplinary Board revoked Ann Marie Miller's license to practice law. In consenting to the revocation, Ms. Miller admitted that, in bankruptcy cases, she had violated disciplinary rules that govern diligence, communication, safekeeping property, communications concerning a lawyer's services, and misconduct that reflects adversely on the lawyer's fitness to practice law. She acknowledged that at the time of the revocation, the bar was investigating allegations of misconduct. RPC 1.3(a); 1.4(a); 1.15; 7.1; 8.4(b),( c).

[12] The Court is bound by the Virginia Courts' decisions in any event. The Court must and does recognize the history of Miller's professional career, background, experience and current circumstances, including her consent to the revocation of her law license, Exhibit 9.

5

      Miller's testimony about some aspects of her practice as an attorney prior to her revocation was credible. Miller testified that she had been a licensed attorney in Roanoke, Virginia and that she had a form of partnership with Jeffrey Kessler, Esq.[13] Mr. Kessler maintained his practice in Vinton, Virginia. Both Vinton and Roanoke are within the area covered by the United States District Court for the Western District of Virginia. Miller's practice consisted of a high volume consumer bankruptcy practice.[14] Miller had previously practiced in the Eastern District of Virginia.[15]

      Miller also testified that her disciplinary proceedings in Virginia were instituted as a result of her failure to file bankruptcy cases for clients who had paid her to file their bankruptcy cases. The trust account maintained in her legal practice was "out of trust" at the time. Although Miller acknowledged these facts, she blamed her ex-partner, Mr. Kessler, for these problems. She maintains that Kessler was in sole custody and control of the books and records, including the trust account, for their joint legal practice.[16]

      Miller acknowledges that a receiver was appointed for Miller's practice by the Virginia Circuit Court, on the application of the Virginia State Bar, and that receiver was unable to recover sufficient funds to repay all of Miller's clients for the funds paid Miller's firm. Miller's testimony disclosed that deficiency of over $200,000 remains unpaid to Miller's former clients.

      The Court finds that Miller presents herself as a smart, savvy, able person who is seriously misguided, self-serving and not credible. Miller indicates that she is willing to self-correct her mistakes and change her method of operation and remedy her deficiencies voluntarily. She protests that sanctions in the present case will only put her out of business and severely harm her financially. However, in light of Miller's lack of credibility and her deceptive business practices, Miller cannot be trusted to effectuate the changes needed to correct the problems noted by the Court and the parties. Moreover, the Court does not have a duty to assure that Miller can continue to support herself as bankruptcy petition preparer.

      The Court's conclusions are bolstered by Miller's presentation of her case. Miller's presentation of case was done professionally and showed the courtroom skills which the Court would expect from an experienced bankruptcy practitioner. Miller's proffered naivety in her disciplinary action is not credible.

---

[13] The second Exhibit E to the Response is a purported partnership agreement between Miller and Kessler.

[14] Wadsworth Exhibit 9, p. 1 ¶ 6, includes a representation that Miller had over 700 clients as a Virginia attorney.

[15] Miller's Voluntary Petition discloses that she had also filed a personal Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia, Case No. 05-73137 (filed August 5, 2005) in which she received a Chapter discharge on November 22, 2005.

[16] This aspect of Miller's testimony is not entirely credible. The first Exhibit E to the Response is an email from Miller to Kessler which, in part, states, "I have nothing — I have less than what I am supposed to have in **my trust account.** I'm using **my trust account** to pay salaries and expenses."(Emphasis added). The quoted language suggests that Miller had access to a trust account which was used to pay operating expenses. Thus, at least to some extent, Miller's trust account deficiencies were of her own making.

Throughout Miller's testimony she displayed a pattern of disclaiming conduct which she knew to be improper by couching that conduct in the guise of some superficially proper conduct. This is illustrated by Miller's characterization of the $400 fee charged in the *Hernandez* case and most other cases in which Miller provided petition preparation services. Miller's Response to the Motion acknowledges that $150 had been deemed to be a "reasonable" fee under 11 U.S.C. § 110(h)(3) and its antecedents. The additional $250 fee charged in these cases purports to be for services, such as teaching legal research techniques, which she reasonably knew or should have known were prohibited by 11 U.S.C. § 110(e). The Court finds that Miller's fee practices are deceptive.

Miller desires to charge $400 and contrived a scheme to mask her excessive fee in guise of providing added value services which were neither properly provided nor of much added value.

**Miller's Response and Testimony That She Does Not Provide Legal Advice is Not Credible**

Miller has denied giving legal advice to her bankruptcy petition preparation customers in both her Response to the Motion and her testimony before the Court. Bankruptcy petition preparers may not provide legal advice to their clients. 11 U.S.C. § 110(e)(2)(A). A non-exhaustive list of prohibited "legal advice" is contained in § 110(e)(2)(B). Prohibited legal advice includes advising a debtor whether the debtor, "will be able to retain the debtor's home, car, or other property after commencing" a bankruptcy case. §110(e)(2)(B)(iii)   A preparer also cannot advise a debtor how to characterize "the nature of the debtor's interests in property or the debtor's debts." §110(e)(2)(B)(vi).  These prohibitions have the effect of proscribing any advice about exemptions which the debtor may be entitled to claim under applicable law.

The evidence in this case establishes that Miller violated § 110(e)(2) by giving legal advice about applicable exemptions under the ruse of teaching debtor clients how to do legal research. Miller's Response admits that if the client selects an exemption which appears to be "wrong" she advises the client to do legal research.  Like a medium guiding the customer's hand on the pointer on a Ouija board, this conduct is designed to move a debtor client towards a result which Miller believes to be "legally correct" without being seen as the force that moved the client in that direction.  This is impermissible under § 110(e)(2).

The exemptions claimed in garnished funds and bank deposits in *Hernandez* illustrates this artifice.  Colorado, unlike some other states, does not have a specific statutory exemption for bank accounts. The Court finds that it is inconceivable that a debtor like Hernandez, with his limited legal skills, experience and ability could accurately claim a deduction in a bank account deposit. In Colorado, the claim of exemption in bank account deposits is most often couched in the argument that the entire balance of the bank account is attributable to the debtor's earnings and therefore within the statutory exemption for "earnings." COLO.REV.STAT. §§ 13-54-104(2)(a) and 5-5-106. As argued by Berken, this exemption argument is premised upon case law, most notably, *Morrison v. Kobernusz (In re Kobernusz)*, 160 B.R. 844 (D.Colo.1993) which affirmed the continuing vitality of the Colorado Supreme Court's decision in *Rutter v. Shumway*, 16 Colo. 95, 26 P. 321 (1891).

*Rutter v. Shumway* holds that bank account deposits which can be **traced** to the debtor's wages and earnings are exempt.[17] As discussed in *Kobernusz,* the rationale of *Rutter v. Shumway* was expanded to prohibit setoffs by employers.[18]

It is inconceivable that a consumer debtor, untrained in the law, with only rudimentary training in legal research, could reach an unassisted conclusion that his or her bank account deposits are exempt under Colorado law. The case law discussed above and the critical element of tracing deposits to earnings are unlikely to be found and understood by a pro se debtor. Nor is it likely that bankruptcy preparation software could provide a pro se debtor which sufficient assistance to permit that debtor to conclude that *Rutter v. Shumway's* "tracing" requirement could be met.

Wadsworth Exhibit 8 is a proposed order granting the debtors a extension of time to file pay advices in another case in which Miller was the preparer, *In re Adam Joseph and Kayla Sue Copple*, Case no. 11-16378 EEB, docket #17. This order, and the associated motion, Wadsworth Exhibit 7, make references to 11 U.S.C. § 521(a)(i)(1) and (B)(iv) and FED.R.BANKR.P. 1007(c). These references and the associated procedures mandated by them are also most unlikely to have been discovered by pro se debtors with rudimentary training in legal research.

The invisible hand of Miller's assistance and legal advice is betrayed by the sophistication and apparent ghostwriting of the referenced pleadings in *Hernandez* and *Copple*.[19]

Wadsworth Exhibit 2 is a completed form which was completed in the *Hernandez* case. The form was created by the United States Trustee's Office to query pro se debtors about the type and content of any assistance which they may have received in conjunction with the filing and prosecution of their bankruptcy case.

The Court received ambiguous testimony about the completion of Exhibit 2. Miller testified that she believed that this form was completed by Hernandez's wife because of the Debtor's limited fluency in English. Wadsworth's testimony suggested that Hernandez was proficient in English and that it was likely that the Debtor and not is wife completed the form. The Court cannot resolve the authorship issue where Hernandez failed to appear for the hearing to give testimony.

---

[17] *Shumway* was decided under a long repealed 1885 exemption statute which provided that,"there shall be exempt from levy under execution, or attachment or garnishment the wages and earnings of any debtor to an amount not exceeding one hundred dollars, earned during the thirty days next preceding such levy." 16 Colo. *at* 98, 26 P. *at* 322, *quoting*, Sess. Laws 1885, p. 262.

[18] *Finance Acceptance Co. v. Breaux*, 160 Colo. 510, 419 P.2d 955 (1966).

[19] Ghostwriting of pleadings for pro se debtors carries with it additional issues. Such ghostwriting "necessarily causes the court to apply the wrong tests in its decisional processes and can well produce unjust results." *Johnson v. Bd. of County Com'rs for the County of Fremont*, 868 F.Supp. 1226, 1231 (D.Colo.1994), *reversed on other grounds*, 85 F.3d 489 (10th Cir. 1996), *cert. denied sub nom.*, *Greer v. Kane*, 519 U.S. 1042 (1996); *see also, In re Merriam*, 250 B.R. 724, 733-34 (Bankr.D.Colo.2000)( "regardless of whether it is an attorney or petition preparer who prepares the petition, if such person does not sign it [,] the Court, trustee, and creditors do not know who is responsible for its contents").

Exhibit 2 is relevant to Wadsworth's allegations that Miller gave legal advice to Hernandez. The checked blocks on Exhibit 2 indicate that Miller did hold herself out as an attorney and did advise the Debtor about the differences between various chapters of the Bankruptcy Code and exemptions. Each of these implied representations is representative of a violation of §110(e)(2).

The Debtor's signature on Exhibit 2 and the absence of any proffered reason why either Mr. Hernandez or Ms. Hernandez would fabricate a response on Exhibit 2 which implicates Miller, suggests that Exhibit 2 is credible, if not substantial, evidence of Miller's legal assistance and her actions creating an inference in the Debtor's mind that she was an attorney with special bankruptcy law expertise. Miller's testimony to the contrary is not credible.

Wadsworth Exhibit 10 is an ad placed by Miller in a July 7, 2011, edition of the "YourHub" section of the DENVER POST newspaper. This ad suggests that Miller has special expertise in bankruptcy and offers services between the typing of bankruptcy paperwork. The ad utilizes phrases including: 1) "●Stop creditor calls"; 2) "● Stop wage garnishments"; and 3) "●Eliminate debts." These phrases suggest that Miller has knowledge and expertise in bankruptcy law which extends beyond knowing how to type bankruptcy forms.

Miller's ad suggests that a reasonable lay person could conclude that Miller was an attorney and holding herself out as such. This is also consistent with Miller's own testimony that she sometimes tells clients that she is a "former" attorney.[20]

### Miller is A Seasoned Bankruptcy Attorney and Preparer
### Whose Representations to Clients and The Court are Disingenuous

Miller's testimony, the Response, and other evidence before the court establish that she had been the attorney of record in approximately 700 cases in Virginia, the bankruptcy petition preparer in 177 cases in the District of Colorado within the one year period before the July 14, 2011 hearing in this case, and perhaps several dozen more cases as a preparer in the months preceding that one year lookback period.

Two Chapter 7 panel trustees testified at the July 14, 2011 hearing, Wadsworth and Jeffrey Hill. Each of these trustees indicated that the quality of Miller's preparation services was good. This is indicative of Miller's experience and her positive attitude towards her clients. However, it is also suggestive that Miller's invisible hand, utilizing her legal training and experience, influenced the quality of the debtors' information.

Miller's advertisement lulls a prospective client into believing that Miller can be more than a typist when she knows that applicable law does not permit her to provide any other services. *E.g., In re Gomez*, 259 B.R. 379 (Bankr.D.Colo. 2001)(the proper scope of a petition

---

[20] An unlicensed attorney completing documents for filing in a bankruptcy case is a bankruptcy petition preparer. *In re Seehusen*, 273 B.R. 636 (Bankr.D.Colo.2001). Such preparers must take special care to ensure that their clients are aware of their status as unlicensed attorneys and their failure to do so is sanctionable. 273 *B.R. at* 639. *See also, People v. Cain*, 957 P.2d 346 (Colo.1998); *People v. Mason*, 212 P.3d. 141, 147 n.14 (O.P.D.J. 2009) (*Cain* and *Mason* are both cases in which a suspended lawyer was further sanctioned for engaging in the practice of law while suspended because they prepared legal documents for clients for compensation).

preparer's services are those of a scrivener/typist who is compensated for the transcription of information supplied by the client onto bankruptcy forms as specified by the client).

Miller further obfuscates the scope of the services that she can properly provide by her representations that she is trying to help economically disadvantaged individuals. Such individuals may well seek out non-attorney assistance in legal matters because of the perception that attorney services are unaffordable. Although Miller's fees are below that of a typical attorney fee for a consumer bankruptcy case, they are on the high end for the services which Miller can properly provide.

This Court's opinion in *In re Hennerman*, describes the scope of prohibited legal advice under § 110 (e)(2)(B)(vii), which serves as the "catchall provision" of § 110(e)(2), as a prohibition on:

> advising debtors about forms, timelines, what may or may not occur in the case, whether debtors might be able to avoid liens under 11 U.S.C. § 522(f)(1), cramdown rights, redemption rights, structuring of Chapter 13 plans, or **virtually any other** substantive or procedural issue in a consumer bankruptcy. Virtually any exercise of discretion about what to include or not include in the bankruptcy documents, will touch upon a bankruptcy "procedure" or "right." . . ." This clause represents a catchall provision which leaves little room for a bankruptcy petition preparer to do anything beyond the typing and copying tasks discussed in *[In re] Gomez*,[251 B.R. 379, 381(Bankr.D.Colo.2001)] and a myriad of other published and unpublished opinions under pre-BAPCPA law. *In re Hennerman*, 351 B.R. 143,151-52 (Bankr.D.Colo.2006)(Emphasis added).

The complexities associated with typing the forms in a case and not the complexities of the underlying case must drive the "reasonableness" of the fee charged. The complexity of a bankruptcy case can correlate with the complexities associated with preparing the bankruptcy forms. The volume of typing and not the income of the debtor is the driving force which will determine the reasonableness of a bankruptcy petition preparer's fees.

Miller may mean well in her attempts to establish her marketing niche. However, these efforts must be proscribed by the Court when these marketing efforts influence customers into thinking that Miller can provide prohibited services.

### The Lodestar Methodology Must Be Employed by The Court to Determine the Reasonableness of the Fees Charged by a Petition Preparer

The application of a "lodestar" approach to fees allowed to bankruptcy petition preparers in well established. *See, e.g., Scott v. United States Trustee (In re Doser)*, 412 F.3d 1056, 1065 (9th Cir. 2005).

As discussed in *Doser*, any and all services other than typing or transcribing bankruptcy forms are improper and non-compensable. *Id.* The guidepost for determining the appropriate fees

"is what professional typists or word processors would charge." *Id.*, *quoting*, *In re Bush*, 275 B.R. 69, 85 (Bankr.D.Id.2002). Miller's Reply to the UST's Objection to her Motion to Refer the Motion to Alternative Dispute Resolution, Wadsworth Exhibit 6, (docket #31), acknowledges that *Bush* embodies the precedents which have driven the various bankruptcy courts, and the few appellate courts which have ruled on this issue. Miller seeks to argue that the various courts' reliance on the lodestar methodology is not well founded. The Court disagrees.

Miller's argument in her reply is premised upon being able to provide services that she is precluded from offering. It is also premised on a system of regulation of bankruptcy petition preparers which does not exist under the present Bankruptcy Code. Whatever the merits of Miller's "policy" arguments might be, applicable law which binds this Court provides otherwise.

The lodestar method requires the Court to determine what a reasonable fee should be by reference to two factors, the reasonable amount of time to complete the tasks billed for and the reasonable hourly or, occasionally other periodic, rate for similar tasks. Embodied in the Court's determination of these two variables are a number of other variables, as discussed in *Doser*.

The "reasonable" hourly rate for services is often best indicated by the "market" rate for similar services. The "reasonable" amount of time to complete tasks will often require evidence where the court's own expertise does not permit it to make this assessment.

Miller's fee of $400 for most cases, including *Hernandez*, is on the high side of fees charged by bankruptcy petition preparers based upon the Court's own observation of fees charged by bankruptcy petition preparers in cases that have come before the Court. The Court's sense that $400 is "on the high side" comports with the "lodestar" evidence adduced by Wadsworth and the UST at hearing.

Three witnesses gave testimony at the July 14, 2011 hearing in this matter as to the time and expense involved in the data entry component of preparing a bankruptcy filing. These witnesses were: 1) Anne Hager, an experienced typist who testified to her experience typing bankruptcy packages, as a contractor, for attorneys; 2) Jeffrey Hill, Esq., an experienced consumer bankruptcy practitioner and Chapter 7 panel trustee who testified about his costs to prepare bankruptcy packages for his clients; and 3) Ellen Welner, another experienced consumer bankruptcy attorney who testified to the costs for her firm to prepare bankruptcies in house and, occasionally, through independent contractors. The Court finds that each of these three witnesses was highly credible. Indeed, Miller's cross-examinations of these witnesses were brief and did not challenge the credibility of any of these witnesses. All three witnesses testified that the *Hernandez* case appeared to be a routine filing that would not have taken more than a couple of hours to prepare.

The fourth witness who provided "lodestar" testimony was Miller. Miller's testimony was not credible. Her testimony was that each case required her to spend 11-12 hours for bankruptcy petition related services and this time included a variety of services which the Court holds are non-compensable.

### Miller's Fees in Hernandez Must Be Disgorged

The reasonable fee is the *Hernandez* case need not be determined by the Court. Under 11 U.S.C. § 110(h)(3)(B), "all fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with . . . . or subsection [of 110] . . . (e)." Because the Court has found that Miller has violated § 110(e) and also finds cause to impose the forfeiture of the fee in this case as a sanction for the reasons more fully discussed below, the Court need not determine the fee which would have been the "reasonable fee" under § 110(h)(3)(A).[21]

### Rationale for Setting a Presumptive Fee for This Division of the Court

Many judicial districts and divisions thereof have promulgated guidelines governing bankruptcy petition preparation fees. The UST's brief contains a lengthy table of local rules, guidelines, procedural orders, opinions and bench rulings reflecting attempts to set presumptive rates and fees for bankruptcy petition preparers. The United States Bankruptcy Court for the District of Colorado, and its five divisions, have not heretofore promulgated such guidelines. Both Miller and the Movants urge the Court to promulgate a "presumptive fee" in this district based upon the testimony adduced in the *Hernandez* case. Miller urges a fee of $400 or some other figure of that general magnitude. Wadsworth and Berken urge the Court to set a $100 presumptive fee. The UST urges the Court to set presumptive fee but does not advocate a particular amount for that fee.

***The Court declines the parties' invitation to set a presumptive fee for all cases in this district.*** Nevertheless, this Court does believe that a $250 fee is an appropriate total fee for services which are part of, incorporated into, or related to the case prepared by the bankruptcy petition preparer. It includes such things as teaching customers or the clients how to do research, assuming that such services are not prohibited, and would be "giving legal advice."

Berken and Wadsworth argue that a lower fee is appropriate, in part, because bankruptcy petition preparers are "causing more harm than good." The Court disagrees, in part. The principle and practice that a petition preparer who is competent, skilled and efficient and who can effectively assist a *pro se* debtor prepare a bankruptcy petition and all related documents at a costs substantially less than attorneys' prevailing hourly rates – is a good principle and practice. Unfortunately, too many petition preparers are not doing quality work, or efficient work, or providing a fair and professional service. Although some preparers clearly have caused harm to debtors by fraud, ineptitude and otherwise, other preparers have provided a needed refuge for debtors who believe that they cannot afford the services of a qualified bankruptcy attorney. For some debtors this view is accurate.

The Court's determination that $250.00 is a reasonable fee is not a binding fee and is not the final say on what a "presumptive fee" may be in this District. For those cases in which a higher fee is sought the preparer must file a legally sufficient fee disclosure informing the Court

---

[21] Wadsworth and Berken sought to have the Court impose forfeiture of fees that Miller charged in the 177 cases filed in the year preceding the hearing in *Hernandez*. The Court has no evidence supporting forfeiture in any other case besides *Hernandez* and declines to enter any orders under § 110(h)(3) in Miller's other cases.

and parties in interest can filed which specifically details the services provided, the time expended, any unusual problems encountered and any special circumstances that might justify a higher fee than $250.00.

Moreover, while this Court finds that a $250.00 fee is generally reasonable, this determination is also not a safe harbor for substandard and fraudulent preparers. Should a party in interest bring such preparers before the Court, the various sanctions provisions and discretion afforded the Court to order disgorgement of an excessive fee will provide a remedy.

### Application of the Lodestar Methodology to the Presumptive Fee

The "lodestar" testimony by Ms. Hager, Ms. Welner and Mr. Hill all support a presumptive fee based upon several hours being necessary to type the bankruptcy paperwork in a case. However, their testimony does not present a completely comparable model for setting a presumptive fee for bankruptcy petition preparers. Preparers must provide some services which are not included in the types of services about which the Court received testimony. Preparers also have overhead which is different from the overhead of a contract typist or law firm. Thus, the lodestar testimony must be upwardly adjusted to compensate for these factors.

The services which preparers must provide to support their business include some customer contact, copying, answering queries from prospective customers, and similar services related to running a bankruptcy preparation business. Bankruptcy petition preparers often will have overhead that is not accounted for by the lodestar testimony such as office rent, the fees to purchase and keep software updated, and advertising. These types of factors must be allowed for in setting a presumptive fee.

Miller argued and testified that preparers like her also have risks that are not accounted for by the lodestar testimony. The Court agrees that some allowance must be made for exigencies such as periods of time that the preparer may not be able to generate business, the need to redo documents, and similar risks.

### Sanctions Against Miller

Applicable law requires the Court to exercise its discretion to impose measured and tempered sanctions. Typically sanctions are not intended to be compensatory. Rather the Court is required to impose the "'*minimum* that will serve to *adequately* deter the undesirable behavior.'" *White v. General Motors Corp.*, 977 F.2d 499, 502 (10th Cir. 1992)(Emphasis in original), *quoting*, *White v. General Motors Corp.*, 908 F.2d 669, 685 (10th Cir. 1990). One of the other factors that the Court must consider is the ability of the sanctioned party to pay the sanctions imposed. *Dodd Insurances Services, Inc v. Royal Insurance Co. Of America*, 935 F.2d 1152, 1160 (10th Cir.1991). However, the burden of proving such an inability lies with the sanctioned party. *Id.*

Three types of sanctions are appropriate under § 110 in this case. These are statutory damages, monetary sanctions, and injunctive relief.

Under § 110(i), once the Court finds that a bankruptcy petition preparer has violated §110 or committed any fraudulent, unfair or deceptive act, the Court is *required* to award Hernandez his actual damages and a statutory damage amount of $2,000. Wadsworth is entitled to statutory damages of $1,000 plus his reasonable attorneys fees and costs under §110(i)(2). The Court has *no discretion* under § 110(i) other than to determine the reasonableness of the fees and costs sought.

The Debtor is awarded actual damages of $150.00 under § 110(i)(1)(A), which is also the amount by which the Court would find that the fee charged by Miller was "excessive" and subject to disgorgement under § 110(h)(3)(A). Hernandez is awarded $2,000 as statutory damages under §110(i)(1)(B)(ii). Wadsworth is awarded $1,000 under §110(i)(2). Wadsworth and Berken shall submit a bill of costs and fees. The Court may award reasonable fees and costs under § 110(i)(2) after a notice and hearing at which Miller can have the opportunity to contest the reasonableness of the fees and costs sought.

Under 11 U.S.C. § 110(l)(1) the Court may impose fines for violations of § 110(e). The Court has discretion under this subsection to award less than the $500 maximum amount. Exercising this discretion, the Court will impose a fine of $300 which, in accordance with § 110(l)(4)(A), is payable to the United States Trustee Program.

A sanction in the nature of injunctive relief is also appropriate in this case. The Court has found that Miller engaged in: a) a long history of questionable legal or quasi-legal practices; b) has previously been sanctioned for improper conduct in Virginia, c) has violated § 110(e)(2); d) has been deceptive and unfair in contriving a $400 fee which is excessive; and e) misled her customers by charging $250 for other services, such as research, teaching research and other tasks which she knew were outside the proper scope of a bankruptcy petition preparer's services.

Miller seems unwilling or unable to voluntarily change her method of operation and business model. Injunctive relief is proper in light of this intransigence, inability to conform her conduct to the standards of §110 and Miller's apparent unwillingness to accept responsibility for her pattern of conduct before the Virginia courts and this Court.

The sanction ordered by the Court, under 11 U.S.C. § 110(j)(a)(A)(i)(I), (II) and (III), shall be limited in scope and duration. Subject to any additional restrictions which may have previously been imposed upon Miller under Virginia law, Miller is enjoined from working as a bankruptcy petition preparer for a period of **six months** on an independent basis. This sanction does not preclude Miller from providing similar bankruptcy preparation services under the **direct and comprehensive supervision of an attorney licensed to practice law and enrolled to practice before the court conducting a proceeding under Title 11, United States Code, in which Miller's typing product is intended to be filed.** That attorney must supervise Miller's work in all respects and sign all documents prepared by Miller.

The Court's injunction does not prohibit Miller from earning a livelihood, other than as an independent, self-directed bankruptcy petition preparer for a period of six months, utilizing whatever marketable job skills that she may have, including her librarianship training.

The narrow scope of this injunction is a measured and tempered sanction which is responsive to Miller's argument that the Court's order will deprive her of her livelihood. The sanction serves the prophylactic and remedial purposes of § 110(j).

## **Order**

Based upon the above and foregoing, the Court

ORDERS as follows:

1. Under § 110(i), a judgment shall enter against Miller in favor of Debtor for his actual damages and a statutory damage amount of $2,000. Wadsworth is granted judgment against Miller for statutory damages of $1,000 plus his reasonable attorneys fees and costs under §110(i)(2).

2. A judgment shall enter in favor of the Debtor and against Miller for actual damages of $150.00 under § 110(i)(1)(A), which is also the amount by which the Court would find that the fee charged by Miller was "excessive" and subject to disgorgement under § 110(h)(3)(A). Hernandez is awarded $2,000 as statutory damages under §110(i)(1)(B)(ii). Wadsworth is awarded $1,000 under §110(i)(2). Wadsworth and Berken shall submit a bill of costs and fees. The Court may award reasonable fees and costs under § 110(i)(2) after a notice and hearing at which Miller can have the opportunity to contest the reasonableness of the fees and costs sought.

3. Under 11 U.S.C. § 110(l)(1) the Court impose a fine of $300 against Miller which, in accordance with § 110(l)(4)(A), is payable to the United States Trustee Program.

4. Miller is sanctioned under 11 U.S.C. § 110(j)(a)(A)(i)(I), (II) and (III), and subject to any additional restrictions which may have previously been imposed upon Miller under Virginia law as follows:

   A. Miller is enjoined from working as a bankruptcy petition preparer for a period of **six months** on an independent basis. This sanction does not preclude Miller from providing similar bankruptcy preparation services under the **direct and comprehensive supervision of an attorney licensed to practice law and enrolled to practice before the court conducting a proceeding under Title 11, United States Code, in which Miller's typing product is intended to be filed.** That attorney must supervise Miller's work in all respects and sign all documents prepared by Miller.

15

  B. The Court's injunction does not prohibit Miller from earning a livelihood, other than as an independent, self-directed bankruptcy petition preparer for a period of six months, utilizing whatever marketable job skills that she may have, including her librarianship training.

Dated: October 31, 2011, *nunc pro tunc*, July 18, 2011.

            By the Court:

            */s/ Sid Brooks*

            _____
            Hon. Sidney B. Brooks,
            United States Bankruptcy Judge for
            The District of Colorado